**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Alfredo Soqui Ortiz,<br>Petitioner,<br>v.<br>Kevin Bourne, et al.,<br>Respondents. | No. CV-26-01614-PHX-SHR<br><br>**ORDER ADOPTING R&R** |

Petitioner, proceeding pro se, filed this action under 28 U.S.C. § 2241 challenging his immigration detention. He contends his prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. (Doc. 1.) Magistrate Judge Michael T. Morrissey issued a Report and Recommendation ("R&R") recommending the Court deny the Petition, concluding Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and the Due Process Clause of the Fifth Amendment does not require an individualized bond hearing even when detention has become prolonged. (Doc. 18 at 8–9.) Petitioner filed an Objection to the Magistrate Judge's R&R (Doc. 20). Respondents have not filed a response to Petitioner's Objection. For the following reasons, the Court will adopt the R&R.

## I. Standard of Review

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

## II. Background

As set forth in the R&R, Petitioner is a native and citizen of Mexico. (Doc. 1 ¶ 15.) Petitioner entered the United States seeking asylum on November 4, 2024, and was immediately apprehended by immigration officials. (*Id.* ¶¶ 31–32.) On November 18, 2025, Petitioner was ordered removed from the United States. (*Id.* ¶ 39.) Petitioner appealed the removal decision to the Board of Immigration Appeals (BIA), and his appeal remains pending. (*Id.* ¶ 41.) As of the date of this Order, Petitioner has been detained for over twenty-two months.

On March 9, 2026, Petitioner filed the instant Petition asserting he had entered the United States on a temporary visa when he was four years old and had subsequently been detained in 2011 before being removed in 2013, and his redetention in 2024 without a predeprivation hearing violates due process. (Doc. 1 ¶¶ 23–27, 49.) The magistrate judge determined Petitioner is subject to mandatory detention pursuant to § 1225(b) until the BIA finishes its review of his claim for asylum, and his prolonged detention without a bond hearing during this period does not violate due process. (Doc. 18 at 8–9.) Petitioner objects to the magistrate judge's R&R, asserting his previous removal in 2013 "under suspicious circumstances" precludes treating him as an arriving alien under § 1225(a)(1), and, even if he is properly characterized as an arriving alien under § 1225, the magistrate judge misconstrued *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020), and *Jennings v. Rodriguez*, 583 U.S. 281 (2018), and his prolonged detention without a bond hearing violates due process. (Doc. 20 at 6–7.) Petitioner requests immediate release or, alternatively, a bond hearing. (*Id.* at 8.)

## III. Discussion

As a threshold matter, Petitioner appears to argue because he previously entered the United States as a child on a temporary visa, lived here for approximately twenty years, was detained and released on bond in 2011, and was removed in 2013, his 2024 attempt to

return should not be treated as a new arrival subject to § 1225. That argument fails. A prior bond release is a custody determination—not an admission or a continuing immigration status—and the 2013 removal ended Petitioner's earlier period of presence. The relevant event is his attempted entry in 2024. Because Petitioner was apprehended at the border while attempting to enter the United States, he was then an applicant for admission and an "arriving alien" within the meaning of § 1225(a)(1), notwithstanding his earlier detention, bond release, lengthy prior residence, or removal. Section 1225(b)(1)(B)(ii) provides an alien, such as Petitioner, placed in expedited removal proceedings who expresses a credible fear of persecution "shall be detained for further consideration of the application for asylum." As stated in the R&R, the statute therefore mandates Petitioner's detention while the specified proceedings remain pending. (Doc. 18 at 4.)

Petitioner's claim here is constitutional rather than statutory. He does not contend § 1225(b) itself entitles him to release or an individualized bond hearing; indeed, *Jennings* forecloses such a construction of the statute. Instead, Petitioner contends, notwithstanding § 1225(b)'s mandatory-detention requirement, the Due Process Clause independently prohibits his continued detention after it becomes unreasonably prolonged unless the government establishes an individualized justification for such detention.

Whether Petitioner's claim is characterized as involving substantive or procedural due process does not alter the threshold question before the Court: whether the Due Process Clause confers on Petitioner his asserted constitutional entitlement in the first place. Only if Petitioner possesses a constitutional right to an individualized determination of the necessity of continued detention would the Court need to determine what procedures are constitutionally required to protect that right—for example, whether *Mathews v. Eldridge*, 424 U.S. 319 (1976), requires a bond hearing or immediate release. For the reasons explained below, the Court concludes, on Petitioner's threshold-of-entry circumstances and the present record, the duration of Petitioner's detention under § 1225(b) does not itself establish a constitutional entitlement to immediate release or an individualized bond

hearing. Given the Court's conclusion, it need not determine what procedures would be required at a constitutionally compelled bond hearing.

### A. Statutory Detention and *Zadvydas*

As the Supreme Court explained in *Jennings*, § 1225(b)(1) "mandate[s] detention of applicants for admission until certain proceedings have concluded" and "says [nothing] whatsoever about bond hearings." 583 U.S. at 297. Congress instead provided a separate mechanism by which a noncitizen detained under § 1225(b) may obtain release: temporary parole under 8 U.S.C. § 1182(d)(5)(A), when the Secretary of Homeland Security determines release is warranted "for urgent humanitarian reasons or significant public benefit." Thus, the statutory scheme reflects Congress's determination that detention—not individualized bond adjudication—is the rule for persons detained pursuant to § 1225(b). Section 1225(b) does not make dangerousness or flight risk a prerequisite to detention. Requiring an immigration judge to determine whether continued detention is justified by dangerousness or flight risk would introduce an individualized determination Congress did not make relevant to the statutory authority mandating detention.

*Zadvydas* does not require a different result. In *Zadvydas*, the Supreme Court recognized "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" protected by the Due Process Clause and concluded potentially indefinite immigration detention raised sufficiently serious constitutional concerns to require a limiting construction of 8 U.S.C. § 1231(a)(6), which governs detention *after* entry of a final removal order. 533 U.S. at 689–99. The Court held § 1231(a)(6) permits detention only for the period reasonably necessary to effectuate removal and recognized six months as a presumptively reasonable period. *Id.* at 699–701. The concern in *Zadvydas* was potentially indefinite post-removal-order detention when removal was no longer reasonably foreseeable.

*Zadvydas* does not establish every form of prolonged immigration detention presents the same due-process concerns presented in § 1231 detentions, nor does it create a general six-month constitutional limit applicable to detention under § 1225(b). Unlike in

*Zadvydas*, the detention authorized by § 1225(b) lasts only until specified events occur—namely, resolution of the removal proceedings. The Supreme Court itself distinguished the admitted aliens at issue in *Zadvydas* from aliens seeking initial admission, such as Petitioner, whose detention presents "a very different question." 533 U.S. at 682.

**B. Applicant-for-Admission Status**

Petitioner's status as an applicant for admission is significant. Petitioner is not detained under § 1231(a)(6). His removal proceedings are still pending, and § 1225(b) mandates detention until those proceedings are resolved. In *Department of Homeland Security v. Thuraissigiam*, the Supreme Court reiterated an alien seeking initial admission "has only those rights regarding admission that Congress has provided by statute." 591 U.S. 103, 140 (2020). It also explained, albeit in the context of admissions rather than prolonged detention, decisions of executive or administrative officials exercising congressionally conferred authority constitute due process of law. *Id.* at 139.

*Thuraissigiam* did not involve a prolonged-detention claim or determine whether every as-applied constitutional challenge to detention under § 1225(b) necessarily fails. But its treatment of the limited procedural rights associated with initial admission counsels against inferring a constitutional right to the particular procedure Petitioner seeks where Congress mandated detention and selected parole, rather than bond adjudication, as the mechanism for discretionary release.

The entry-fiction doctrine is relevant for the same reason. Petitioner argues the doctrine applies to admission but not to an as-applied challenge to the duration of detention. The Court disagrees. In *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215–16 (1953), the Supreme Court held an alien detained at Ellis Island for more than three years had no constitutional right to release on bond because he was "treated as if stopped at the border." As the Ninth Circuit has explained, *Mezei* necessarily determined the legality of the petitioner's detention as well as the petitioner's continued exclusion. *Barrera-Echavarria v. Rison*, 44 F.3d 1441, 1449–50 (9th Cir. 1995) (en banc) ("[W]hile the Court spoke in terms of exclusion, its holding necessarily included a determination that Mezei's

*detention* was legal as well.") (citation omitted). Thus, Petitioner's detention under § 1225(b) is part of the congressionally prescribed process governing his application for admission rather than a restraint detached from that process.

The Ninth Circuit's recent decision in *Padilla v. U.S. Immigration & Customs Enforcement*, No. 24-2801, ___ F.4th ___, 2026 WL 2822044 (9th Cir. Sept. 21, 2026), does not compel a different result. *Padilla* rejected the proposition a noncitizen's detention under § 1225(b)(1)(B)(ii), standing alone, categorically forecloses any procedural-due-process protection beyond that provided by statute. But *Padilla* did not decide whether prolonged detention under § 1225(b)(1)(B)(ii) requires a bond hearing. Nor did it displace *Thuraissigiam* as to noncitizens who remain at the threshold of initial entry. To the contrary, *Padilla* recognized the entry-fiction framework has continued to apply to noncitizens apprehended immediately after entry, while holding only the broad class before it included persons apprehended "far beyond the threshold of entry covered by *Thuraissigiam*." *See Padilla*, 2026 WL 2822044, at *15.

**C. *Ibarra-Perez* and Split Authority**

In *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156 (D. Ariz. 2020), this Court rejected a substantially similar claim by a petitioner detained under § 1225(b) who sought a custody-redetermination hearing based on the length of detention. After considering Supreme Court and Ninth Circuit authority, the Court concluded the relevant precedent "suggests it is constitutionally permissible to require" detention while an asylum or removal proceeding remains pending. *Id.* at 1160–76. In reaching this conclusion, the Court recognized other district court cases within the Ninth Circuit, including *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), had required bond hearings after prolonged § 1225(b) detention as a matter of due process. *Ibarra-Perez*, 468 F. Supp. 3d at 1177. It declined to follow the reasoning in those cases because they did not discuss relevant legal authority, including *Barrera-Echavarria* and the entry-fiction doctrine. *Id.* at 1177 n.25.

The Court recognizes district courts have reached differing conclusions as to

whether prolonged detention under § 1225(b) eventually requires an individualized bond hearing as a matter of procedural due process.[1] *Compare Banda*, 385 F. Supp. 3d at 1116–20 (applying a multi-factor test to evaluate reasonableness of detention and concluding unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process), *with Ibarra-Perez*, 468 F. Supp. 3d at 1176–77 (rejecting constitutional entitlement to custody-redetermination hearing while removal proceedings remain pending).

Having considered Petitioner's Objection and the relevant authorities addressing the issue, the Court elects to follow the reasoning set forth in *Ibarra-Perez*. Unlike the decisions applying the reasoning in *Banda*, *Ibarra-Perez* engaged in a persuasive historical and legal analysis addressing *Barrera-Echavarria* and the entry-fiction doctrine. And, for the reasons explained above, *Zadvydas* does not control because it concerned potentially indefinite post-removal-order detention under § 1231(a)(6) rather than detention under § 1225(b) while removal proceedings remain pending.

The Court is mindful of the limitations of the relevant precedent. *Jennings* addressed the statutory question without reaching the constitutional issue, and *Thuraissigiam* did not involve prolonged detention. The Court does not foreclose the possibility that, in an appropriate case, prolonged detention under § 1225(b) may support a viable as-applied due-process claim. *See Padilla*, 2026 WL 2822044, at *15. Instead, the Court's conclusion is limited to Petitioner's asserted entitlement on the facts and record

---

[1] The undersigned has previously granted bond hearings to petitioners detained under § 1225(b), but those matters are distinguishable because the government did not oppose the requested hearing or object to the R&R. *See, e.g.*, *Anarbek v. Figueroa*, 2:26-CV-01045-SHR, Docs. 13, 14 (D. Ariz. May 18, 2026) (granting petition to the extent it sought a bond redetermination hearing where respondents expressly stated they did not oppose petitioner's request); *Soltanbakhsh v. Bondi*, No. CV-26-01572-PHX-SHR (JZB), 2026 WL 1511764, at *1 (D. Ariz. May 29, 2026) (adopting an unobjected-to R&R recommending the Court find the petitioner was entitled to a bond hearing under the Due Process Clause). In those cases, the Court did not resolve any contested issues after adversarial briefing or adopt a rule governing prolonged-detention challenges under § 1225(b).

presented and does not rest on Petitioner's detention under § 1225(b) alone. Rather, it rests on Petitioner's initial-entry circumstances, Congress's mandatory-detention scheme and the limited parole mechanism it supplied, and the fact Petitioner's detention remains connected to the resolution of his pending removal proceedings. The Court does not minimize the significance of Petitioner's approximately twenty-two months of civil detention. His proceedings nevertheless remain pending due to his decision to appeal the immigration judge's removal order. On this record, the duration of detention does not itself establish a constitutional entitlement to an individualized bond hearing or immediate release. *See Ibarra-Perez*, 468 F. Supp. 3d at 1177; *Nurbekov v. Rivas*, No. CV-25-04353-PHX-DWL, 2026 WL 1295573, at *1 (D. Ariz. May 12, 2026); *Mamedova v. Noem*, No. CV-25-04619-PHX-DWL, 2026 WL 1162282, at *3 (D. Ariz. Apr. 29, 2026); *Savin v. Rivas*, No. CV-26-01120-PHX-DWL, 2026 WL 1162384, at *3 (D. Ariz. Apr. 29, 2026). Accordingly, Petitioner has not shown his continued detention violates due process.[2] The Court will adopt the R&R and deny the Petition.

## IV. Conclusion

**IT IS ORDERED** the Court **ADOPTS** the R&R (Doc. 18).

**IT IS FURTHER ORDERED** Petitioner's Petition (Doc. 1) is **DENIED**.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment accordingly and close this case.

Dated this 30th day of September, 2026.

Honorable Scott H. Rash
United States District Judge

---

[2] This result is not inconsistent with the Ninth Circuit's recent opinion in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). There, in distinguishing detention under § 1225 from detention under § 1226, the court noted, "Unlike with detention under § 1226, detention under both § 1225(b)(1) and (2) is mandatory and affords no opportunity for release on bond." *Id.* at 1169. While the government may grant temporary parole to aliens subject to § 1225(b)(2)(A), it may do so "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id.* (quoting § 1182(d)(5)(A)).